UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS SIMMONS,

                                     Civil Action No. 20-cv-12750
                  Plaintiff,           Honorable Bernard A. Friedman
                                       Magistrate Judge David R. Grand

COLONIAL LIFE & ACCIDENT
INSURANCE COMPANY aka;
COLONIAL, COLONIAL LIFE,
COLONIAL LIFE INSURANCE
COMPANY,
                              Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF No. 19)

On October 5, 2020, plaintiff Darius Simmons ("Simmons") filed a complaint in this matter against defendant Colonial Life and Accident Insurance Company ("Colonial"). (ECF No. 1.) The Court entered an Order of Reference on October 20, 2020, referring all pre-trial matters to the undersigned pursuant to 28 U.S.C. § 636(b)(1). (ECF No. 4.) On December 11, 2020, Colonial filed a Motion to Dismiss. (ECF No. 19.) Simmons filed a response on December 19, 2020. (ECF No. 28.) The Court finds that oral argument will not aid it in resolving the motion, and it declines to hold a hearing.

## I.    RECOMMENDATION

For the reasons stated below, the Court **RECOMMENDS** that Colonial's motion to dismiss **(ECF No. 19)** be **GRANTED**.

## II.      REPORT

### A.      Background

Simmons entered into a Sales Representative Agreement (the "Agreement")[1] with Colonial

on April 21, 2020.  (ECF No. 1, PageID.35; ECF No. 2, PageID.176-86.)  Simmons alleges that

"around the first calendar quarter of 2019," *i.e.*, *prior to* executing the Agreement he and Colonial

expressly discussed that he would sell life insurance policies to churches across the country on the

lives of their members.  (ECF No. 1, PageID.16-17.)[2]  However, the Agreement does not have any

such specific focus, and instead is a form agreement pursuant to which Colonial appoints

individuals to serve as sales representatives of the company, selling its insurance policies in

jurisdictions in which the representative is licensed.  (ECF No. 2.)  The Agreement states that the

"principal business activity of SR [sales representative] under this Agreement is to (a) open

accounts and maintain effective enrollment conditions; (b) coordinate enrollments and schedule

reworks; (c) enroll accounts and solicit applications for insurance; and (d) service accounts and

policyholders within accounts."  (*Id*. at PageID.176.)

---

[1] Simmons did not attach the Agreement to his complaint.  (ECF No. 1.)  However, his complaint specifically asserts that he and Colonial "entered into a contract," and he asserts a breach of contract claim.  (*Id.*, PageID.35.)  Moreover, at the same time Simmons filed his complaint, he also filed a motion for preliminary injunction, and attached a signed copy of the Agreement.  (ECF No. 2, PageID.176-86.)  In another of Simmons' filings (which was incorrectly docketed as an "amended complaint," *see infra* n.2) Simmons admits that he "accepted and signed [the Agreement] with COLONIAL" and that Colonial thereafter "reneged on its promise."  (ECF No. 9, PageID.223.)  Under these circumstances, it is proper for the Court to consider the Agreement without converting Colonial's motion to dismiss into one for summary judgment.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335–36 (6th Cir. 2007).

[2] Simmons filed a document that was docketed as an "amended complaint" on November 28, 2020.  (ECF No. 9.)  However, Simmons' original complaint is 43-pages long, with over 100 pages of exhibits, and the purported "amended complaint" was a mere 6 pages in total.  The "amended complaint" adds no meaningful facts to Simmons' original complaint, but does seek an injunction.  (*Id*.)  Accordingly, Simmons' original complaint is still the operative complaint in terms of providing the salient factual allegations that allegedly support his claims.

Simmons claims that in early July 2020, after he began taking steps necessary to make sales, he "was told that [Colonial] does not have a product in which a 501c3 [sic] corporation can own policies on their members." (ECF No. 1, PageID.19, 94.) Thus, Simmons claims he lost the opportunity to sell life insurance policies to 40,000+ churches, while foregoing other unspecified opportunities. (*Id*.)

On August 3, 2020, Simmons wrote a letter to Colonial, presenting an "Affidavit" in which Simmons contended that as a result of Colonial's conduct, he suffered "damages" of $4,800,000,000.00 and that Colonial was indebted to him in that amount. (*Id.*, PageID.93-96.) Simmons also asserted that if Colonial did not pay the $4.8 billion or otherwise respond to his letter within ten days, Colonial would be deemed to have "accepted as an estoppel" that it owes Simmons the $4.8 billion. (*Id.*, PageID.93-96.) Colonial did not respond to Simmons' letter, and Simmons then commenced this action, asserting claims for breach of contract, violation of his constitutional rights, fraud, violation of federal and Michigan unfair and deceptive trade practices laws, and estoppel.

On December 11, 2020, Colonial filed a motion to dismiss. (ECF No. 19.) Colonial argues that Simmons cannot state a claim under the United States Constitution, the Michigan Unfair Trade Practices Act, nor the Federal Trade Commission's regulations regarding unfair competition. Colonial also argues that Simmons' breach of contract claim fails due to the Agreement's integration clause which provides, in relevant part, that "there are no prior agreements or representations that are not set forth [in the Agreement]" and that the "Agreement terminates any previous contracts or agreements between the undersigned and Colonial Life." (*Id*. at PageID.285-87.) Colonial argues that Simmons' estoppel claim fails because the estoppel doctrine is inapplicable given the facts of this case. Lastly, Colonial argues that Simmons failed to plead

sufficient facts to support his fraud claims.

Among other arguments, Simmons responds by citing *Chesterfield Exch., LLC v. Sportsman's Warehouse, Inc*., 572 F. Supp. 2d 856 (E.D. Mich. 2008) for the proposition that "[u]nder Michigan law, fraud in the inducement renders a contract voidable at the election of the defrauded party and also authorizes damages flowing from reasonable reliance." (ECF No. 28, PageID.382.)  Simmons claims "all [his] breach of contract claims come under fraud in the inducement." (*Id*. at PageID.383.)  He also cites *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 977 F.Supp.2d 710, 730 (E.D. Mich. 2014) for the proposition that "Michigan law recognizes an exception to an integration clause's conclusiveness in cases of fraud." (*Id*. at PageID.389.)

### B.   Applicable Legal Standards

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

4

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a court is presented with a motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

## C.    Analysis

*1.    Simmons Fails to State a Claim under the United States Constitution*

Simmons alleges that Colonial Life violated Articles IV, V, and IX of the United States

Constitution.  (ECF 9, PageID.221.)  Reading Simmons' *pro se* pleadings liberally, as this Court must do, it appears he is attempting to plead claims for violations of his rights under the Fourth, Fifth, and Ninth Amendments to the Constitution.  (ECF No. 7, PageID.209.)  The Court will construe these claims as being pled under 42 U.S.C. § 1983.

Simmons' constitutional claims against Colonial fail as a matter of law.  The Constitution applies only to conduct by the government and government officials, not conduct of private persons.  Conduct of private parties "lies beyond the Constitution's scope in most instances, ... [though] governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints."  *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991).  Under this doctrine, a private citizen can only be liable for an alleged constitutional violation if: (1) "the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and (2) "the private party charged with the deprivation could be described in all fairness as a state actor."  *Id.*

Simmons pleads no facts showing that Colonial acted under the color of any state law.  To the contrary, his complaint makes clear that the dispute in this case involves a private insurance company and one of its agents about the terms of their private business relationship.  Because Simmons failed to plead any facts suggesting that Colonial is a "state actor," his constitutional claims against it lack merit and should be dismissed.  *Edmonson*, 500 U.S. at 620.

2.     *Simmons Fails to State a Claim under the Michigan Unfair Trade Practices Act or the Federal Trade Commission's Regulations*

Simmons alleges violations of Michigan's Unfair Trade Practices Act, presumably M.C.L. § 500.2005a, which applies to entities that are "in the business of insurance," and the Federal Trade Commission's regulations governing unfair methods of competition, 15 U.S.C. § 45.  (ECF 1,

PageID.5.)  These claims fail as a matter of law.

The Michigan Unfair Trade Practices Act does not grant a private right of action.  As the court explained in *Stockler v. Reassure Am. Life Ins. Co.*, No. 11-CV-15415, 2013 WL 866486, at *9 (E.D. Mich. Mar. 7, 2013):

> The Uniform Trade Practices Act, chapter 20 of the Michigan Insurance Code, authorizes the Commissioner of Insurance to stop unfair methods of competition and unfair or deceptive acts or practices.  Mich. Comp. L. § 500.2043.  The Insurance Code provides:
>
> > Every penalty provided for by this code, if not otherwise provided for, shall be sued for and recovered in the name of the people by the prosecuting attorney of the county in which the insurer or the agent or agents so violating shall be situated; and shall be paid into the treasury of said county; such penalties may also be sued for and recovered in the name of the people, by the attorney general, and, when sued for and collected by him, shall be paid into the state treasury.
>
> Mich. Comp. L. § 500.230.  "The provision precludes a private party from recovering penalties specified in the code unless otherwise provided." *Young v. Michigan Mut. Ins. Co.*, 139 Mich. App. 600, 362 N.W.2d 844, 846 (Mich. Ct. App. 1984) (citation omitted).

*Stockler*, 2013 WL 866486, at *9; *see also Kelly v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. 18-CV-10982, 2019 WL 764348, at *3 (E.D. Mich. Feb. 21, 2019), aff'd, 810 F. App'x 377 (6th Cir. 2020) (citing *Isagholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9; 527 N.W.2d 13, 17 (1994)).

Likewise, 15 U.S.C. § 45 does not grant a private right of action.  *Sharwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001) (citing *Holloway v. Bristol–Myers Corp.*, 485 F.2d 986, 988 (D.C. Cir. 1973)).  Claims under this regulation are prosecuted by the Justice Department or the Federal Trade Commission.  *See Holloway, supra*, at 990.  As such, both of these claims should be dismissed.

3.      *Simmons Fails to State a Claim for Breach of Contract*

Simmons asserts a breach of contract claim based on Colonial's alleged promise to him –

prior to the parties' execution of the Agreement – that he could sell particular insurance products to churches.  Colonial argues that Simmons' claim fails because those alleged promises are not contained within the Agreement, and the Agreement has an integration clause which nullified any such promises:

> This Agreement contains the complete Agreement between the parties and ***each party hereby warrants that there are no prior agreements or representations that are not set forth herein.  This Agreement terminates any previous contracts or agreements*** between the undersigned and Colonial Life.

(ECF No. 2, PageID.186) (emphasis added.)

Simmons responds by stating that due to Colonial's alleged fraud in inducing him to enter into the Agreement, he should be able to use parol evidence[3] to overcome the integration clause. (ECF No. 28, PageID.378-79.)

Before delving into the merits of Simmons' claim, the Court must decide whether to apply South Carolina or Michigan law.  The Agreement contains a choice-of-law provision that states: "It is agreed that all questions and issues relating to the validity or performance under this Agreement shall be governed by the laws of the State of South Carolina."  (ECF No. 2, PageID.185.)

When an agreement contains a choice-of-law provision, a federal court will apply the law of the forum state to determine whether that choice of law provision is valid and enforceable. *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002) (applying this rule in the diversity context); *Wise v. Zwicker & Assoc, P.C.*, 780 F.3d 710, 715 (6th Cir. 2015) (applying

---

[3] "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary or explain the written instrument." *Gilliland v. Elmwood Props.*, 301 S.C. 295, 302 (1990).

this rule in the federal question context).  As such, the Court will apply Michigan law to determine

whether the Agreement's choice of law provision is enforceable.  *See id.*

The Michigan Supreme Court has stated:

> In interpreting a contract, our obligation is to determine the intent of the
> contracting parties.  If the language of the contract is unambiguous, we
> construe and enforce the contract as written.  ***Thus, an unambiguous***
> ***contractual provision is reflective of the parties' intent as a matter of law.***
> ***Once discerned, the intent of the parties will be enforced unless it is***
> ***contrary to public policy.***

*Quality Products & Concepts Co. v. Nagel Precision, Inc*, 469 Mich. 362 (2003) (emphasis added).

Michigan courts have also stated that "[i]t is undisputed that Michigan's public policy

favors the enforcement of contractual forum-selection clauses and choice of law provisions."

*Robert A. Hansen Family Tr. v. FGH Indus., LLC*, 279 Mich. App. 468, 476; 760 N.W. 2d 526,

532 (2008).  Here, the Agreement's choice of law provision is clear and unambiguous.  Therefore,

the Court will enforce this provision and apply South Carolina law to the dispute between the

parties.

The Court thus turns to the issue of whether, under South Carolina law, Simmons' breach of

contract claim fails due to the Agreement's integration clause.  (*Id*. at PageID.285-87.)  To prevail

on a claim for breach of contract under South Carolina law, a plaintiff must demonstrate the

following elements: (1) the existence of a contract; (2) its breach; and (3) damages caused by such

breach.  *Hotel & Motel Holdings, LLC v. BJC Enterprises, LLC*, 780 S.E.2d 263, 272 (S.C. Ct.

App. 2015).  Under South Carolina law, a clear, unambiguous contract is to be enforced as written.

*ERIE Ins. Co. v. Winter Const. Co*., 393 S.C. 455, 461, 713 S.E.2d 318, 321 (Ct. App. 2011).  In

addition, when a contract includes an integration clause, a party generally may not present parol

evidence to establish an antecedent agreement or representations that contradict or vary the terms

of the parties' written agreement.  *Gilliland*, 301 S.C. 295, 302; *see also, Rodarte v. Univ. of S.C.*,

9

419 S.C. 592, 604, 799 S.E.2d 912, 918 (2017).  Moreover, under South Carolina law, "one who

has signed a contract is presumed to have read, understood, and assented to its terms."  *Gibson v.*

*Epting*, 426 S.C. 346, 352, 827 S.E.2d 178, 181 (Ct. App. 2019), reh'g denied (May 17, 2019)

(citing *Wachovia Bank Nat'l Ass'n v. Blackburn*, 407 S.C. 321, 333, 755 S.E.2d 437, 443 (2014)).

Applying the above caselaw here, it is clear that Simmons cannot present parol evidence

to establish that Colonial made any allegedly fraudulent misrepresentations prior to his April 12,

2020 execution of the Agreement.  By signing the Agreement and agreeing to be bound by its

integration clause, Simmons warrantied that there were no prior agreements or representations

other than those set forth in the Agreement, and that any prior ones were terminated upon the

Agreement's execution.  This means Simmons cannot prove a breach of contract arising out of

alleged prior promises by Colonial not found in the Agreement.  Since Simmons' breach of

contract claim is based on such prior alleged promises, *see supra* at 2, it fails as a matter of law.[4]

Simmons counters by citing *Chesterfield Exch., LLC v. Sportsman's Warehouse, Inc*., 572

F. Supp. 2d 856 (E.D. Mich. 2008) for the proposition that "[u]nder Michigan law, fraud in the

inducement renders a contract voidable at the election of the defrauded party and also authorizes

damages flowing from reasonable reliance."  As such, he claims "all [his] breach of contract claims

_____

[4] The Court also notes that the Agreement contains a provision titled "Colonial Life's Right to
Cancel Policies," which states:

> ***Colonial Life reserves the right to reject any application for insurance*** and
> to cancel, refuse to renew, or modify, in accordance with the policy
> provisions, any policy issued by Colonial Life.  Colonial Life further reserves
> the right to withdraw any policy or riders from the market at any time.

(ECF No. 2, PageID.185) (emphasis added.)

That Colonial could reject any application for insurance necessarily means there was no promise
Simmons would be allowed to make any particular sale, or at least not one on which Simmons
could reasonably have relied.

come under fraud in the inducement."  (ECF No. 28 at PageID.383.)  He also cites *JAC Holding*

*Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710, 730 (E.D. Mich. 2014) for

the proposition that, "Michigan law recognizes an exception to an integration clause's

conclusiveness in cases of fraud."  (*Id*. at PageID.389.)  These cases are of no help to Simmons.

   First, as stated above, this Court must follow South Carolina precedent with regard to this

case pursuant to the Agreement's choice of law provision.  This is reason enough for rejecting

Simmons' argument which relies on Michigan law.  Second, even in this Court followed the

reasoning in *Chesterfield* or *JAC*, Simmons' arguments still fail.  In *Chesterfield*, the defendant

argued that fraud nullified the integration clause and allowed the court to consider "parol evidence

to show that it was duped into signing the lease by the promise of a Sam's Club store as a co-

tenant."  *Id*. at 865.  In rejecting the defendant's argument, the court first explained, "[t]o be

actionable, fraud normally must relate to a statement concerning a past or existing fact. . . .

Michigan also recognizes promissory fraud in the inducement, which occurs when 'a party

materially misrepresents future conduct under circumstances in which the assertions may

reasonably be expected to be relied upon and are relied upon.' [ ].  Fraud in the inducement renders

the contract voidable at the election of the defrauded party . . ."  *Chesterfield*, 572 F. Supp. 2d at

865.  The court found that there was "no evidence that [the plaintiffs] misrepresented a past or

present fact in order to induce [the defendant] to sign the lease.  Nor did it make a promise that it

had no intention of fulfilling in the future."  *Id.* at 866.  Similarly, here Simmons complains about

decisions Colonial made *after* the Agreement was executed, and as discussed below, Simmons'

complaint fails to adequately allege facts supporting a claim that Colonial fraudulently induced

him to enter into the Agreement.

   *JAC Holding* is likewise unhelpful to Simmons.  In that case, the primary claim by the

plaintiffs was that "the defendants' misconduct caused them to pay considerably more for a manufacturing company than it was worth." *JAC Holding*, 997 F. Supp.2d at 716.  In analyzing whether the merger clause barred the fraud claim, the Court held that it did not because the merger clause only extinguished "prior contractual 'understandings,' not 'understandings' the plaintiffs had about JAC's financial condition." *Id*. at 730.  The Court explained:

> There is an important distinction between (a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings between two parties that are not expressed in a written contract.  It is only the latter that are eviscerated by a merger clause, even if such were the product of misrepresentation.

*Id*.

Here, Simmons' complaint makes clear that he only alleged prior collateral, contractual understandings between him and Colonial – that he would be permitted to sell a particular insurance product in the future – not representations of fact.  Even under the *JAC Holding* case on which Simmons relies, such prior collateral understandings were terminated by the Agreement's integration clause.

For all of these reasons, Simmons' breach of contract claim should be dismissed.

        4.       *Simmons Fails to State a Fraud Claim*

Simmons' fraud claims also fail as a matter of law.  Claims that sound in fraud must be plead with particularity.  *See* Fed. R. Civ. P. 9(b).  Under South Carolina law, a party asserting a claim for fraud in the inducement to enter into a contract must establish "(1) a representation, (2) its falsity, (3) its materiality, (4) knowledge of its falsity or reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.*" Parker v. Shecut*, 340 S.C. 460, 482, 531 S.E.2d 546, 558 (Ct. App. 2000). Moreover, the hearer's reliance must be reasonable.  *See, e.g., McLaughlin v. Williams*, 379 S.C.

451, 457–58, 665 S.E.2d 667, 671 (Ct. App. 2008) ("there can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter.").

Simmons alleges that he relied on representations from Colonial District General Agent Christopher T. Newman and Colonial Agency Development Manager Deborah Garofalo regarding being able to sell a particular insurance product to members of non-profit churches. (ECF No. 1, PageID.21.)  However, Simmons' allegations do not[5] rise to the level of specificity needed to establish that Colonial had a fraudulent intent when the representations were made.  At most, Simmons has merely alleged that he was told one thing prior to signing the Agreement, and something different thereafter.  That clearly is insufficient to establish Colonial's knowledge of the alleged misstatements' falsity or reckless disregard of their truth or falsity.

Moreover, none of the e-mail communications Simmons attached to his complaint between he and Newman or Garofolo contradict the parties' written Agreement in any way.  (ECF No. 1, PageID.81-90; ECF No.1-1, PageID.101-107.)  Indeed, the e-mails make no promises to Simmons guaranteeing his ability to sell any particular group life insurance policies to churches.  (*Id*.)  At most, they show both Newman and Garofalo helping Simmons plan sales pitch to churches.  (*Id.*)  One of the e-mails makes clear that Colonial's underwriting department would need to approve any contacts, forms or lists before any products can be sold.  (*Id*., PageID.81-82.)  This is consistent with the Agreement's provision that Colonial reserved the right to approve or reject any applications of insurance submitted by Simmons.  (ECF No. 2, PageID.185.)

Because Simmons failed to plead his fraud claim with the requisite particularity it fails as a matter of law and should be dismissed.

---

[5] Simmons attached e-mails between him and Newman and Garofalo to his complaint.  Thus, they may be considered without converting the motion to dismiss into one for summary judgment.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335–36 (6th Cir. 2007).

13

5.      *Simmons Fails to State a Claim for Equitable Estoppel*

Finally, Simmons' equitable estoppel claim lacks merit.  Simmons argues that because Colonial did not respond to his August 3, 2020 demand letter, Colonial "accepted as an estoppel" that it owes him the $4.8 billion he demanded therein.  (ECF No. 1, PageID.93-96.)  Consequently, Simmons asserts that under the doctrine of equitable estoppel, Colonial is deemed to have admitted all of the allegations in his letter and complaint, and is barred from contesting them in this lawsuit. (*Id.*, PageID.30.)

Where equitable estoppel applies, it "operates to deny a party 'the right to plead or prove an otherwise important fact.'"  *Maher v. Tietex Corp.*, 500 S.E.2d 204, 209 (S.C. Ct. App. 1998). To warrant application of equitable estoppel, the party asserting it must show "(1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts."  *Id.*  That party must also show that he "(1) lack[ed] [ ] knowledge and [ ] the means of knowledge of the truth as to the facts in question; and (2) reliance upon the conduct of the party estopped."  *Id. See also Harrell v. BMW of N. Am., LLC*, No. 3:20-CV-00218-SAL, 2021 WL 409836, at *6 (D.S.C. Feb. 5, 2021).

Here, the equitable estoppel doctrine does not apply.  The "conduct" in question that Simmons is using to invoke the doctrine is Colonial's failure to respond to his demand letter.  That conduct simply does not constitute "a false representation or concealment of material facts."  Nor has Simmons presented any law that would allow him to unilaterally dictate to Colonial what it must to do – *e.g.*, responding to his letter within 10 days – to avoid owing him the money he claims he is due, or being able to contest his allegations in court.

Moreover, "[t]he essence of equitable estoppel is that the party entitled to invoke the

14

principle was misled to his injury." *Rodarte*, *supra,* 419 S.C. 592 at 601; 799 S.E. 2d at 917.  Here, however, Simmons' alleged injury flows not from Colonial's refusal to respond to his demand letter, but from its earlier conduct that he claims is actionable.

For all of these reasons, the doctrine of equitable estoppel does not bar Colonial from disputing Simmons' allegations or from fully defending itself in this case.

## II.     RECOMMENDATION

For the foregoing reasons, the court **RECOMMENDS** that Colonial's motion to dismiss (**ECF No. 19**) be **GRANTED** and that Simmons' complaint be **DISMISSED**.

Dated: February 26, 2021                          s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 26, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

16